D. O. FLORETH, H. T. FLORETH, AND R. G. FLORETH, CO-PARTNERS, DOING BUSINESS AS ILLINOIS TIRE AND BATTERY COMPANY, (PLAINTIFFS), RESPONDENTS, V. JAMES W. TOTSCH AND E. A. TOTSCH, (DEFENDANTS), APPELLANTS.—118 S. W. (2d) 64.

St. Louis Court of Appeals.   Opinion filed June 7, 1938.

*Walter Stillwell* and *Roy Hamlin* for appellants.

BENNICK, C.—This is an action in replevin which originated in a justice's court in Mason Township, Marion County, Missouri.

Plaintiffs, who do business out of Jacksonville, Illinois, as the Illinois Tire & Battery Company, are manufacturers' agents and jobbers for the distribution and sale of certain types of automobile equipment, and in 1936 had the exclusive agency for the distribution of Hood tires and Exide batteries in a territory which included Hannibal, Mo.

Their agent or representative in charge of the Hannibal territory was one Peggs, who, early in 1936, advertised for a local sales agent for the City of Hannibal. Defendants answered the advertisement, and subsequently, on February 25, 1936, after a conference with Peggs, entered into a dealer's consignment contract with plaintiffs with respect to their handling of plaintiffs' tires, tubes, and batteries.

By the terms of such contract it was agreed, among other things, that defendants would accept all goods sent them by plaintiffs on consignment, and would preserve and be responsible for the same until paid for or returned to plaintiffs in good condition; that title to all goods consigned to defendants should remain in plaintiffs; that defendants should return all unsold goods to plaintiffs at the termination of the contract; that plaintiffs should have the right at any time to cancel the contract; and that the contract should remain in force from the date of its acceptance until terminated by mutual agreement or at plaintiffs' option.

Following the execution of such contract defendants opened up a place of business in Hannibal, and thereupon had consigned to them by plaintiffs certain tires, tubes, batteries, and equipment which they placed in their shop for sale to the public, their profit to consist of the difference between the amount they might receive upon a sale of the goods at retail and the price at which the same had been consigned to them by plaintiffs.

It appears that some eight or nine weeks later plaintiffs not only opened up a larger and more conveniently located store for the sale of their products in Hannibal in competition with defendants, but also advertised their products for sale in the new and larger store at prices and upon terms which defendants could not meet. On May 11, 1936, defendants wrote plaintiffs complaining of the manner in which they were being dealt with by the latter, and requesting an interview with plaintiffs' representative the next time he should be in the city.

Shortly thereafter Peggs called upon defendants in response to their letter, but apparently gave them no satisfaction in the matter of their complaint. A few days later he returned for a second visit, and on that occasion made an inventory of the stock on hand, giving defendants a copy of it.

Whether Peggs stated to defendants in express words that he was exercising plaitiffs' option to terminate the contract was a point in dispute in the case. Peggs testified that he did inform defendants that the contract was canceled and that plaintiffs would demand the return of their merchandise, while defendants for their part testified that neither Peggs nor plaintiffs themselves had ever said anything to them about the cancellation or termination of the contract.

However defendants did admit that on the occasion of Peggs' second visit to the store, after the inventory of the stock had been completed, he announced his intention to remove the merchandise (seemingly to plaintiffs' other store), and actually had taken a couple of tires off of the rack and was in the act of putting them in his automobile when he was stopped by one of the defendants who advised him that "if it was his intention to take away any of the stock, he would have to replevin it." They also admitted that in the course of the conversation Peggs told them on that occasion that he would make two or three trips with his automobile in removing the property that had been lodged with them under consignment, but that when they informed him that "he would have to resort to a replevin suit and try it out in court," he left without any further attempt to take the property away at that time.

Thereafter plaintiffs instituted their action in the justice's court for the replevin of the property, and at the same time filed with the justice their statutory replevin bond (secs. 2551, 2552, R. S. Mo. 1929 [Mo. Stat. Ann., secs. 2551, 2552, pp. 2547, 2548]) in the penal sum of $500, upon the filing of which plaintiffs became entitled to have the property delivered over to them pending the disposition of the action. The property was thereupon taken by the constable under order of the justice and delivered over into the possession of plaintiffs, and in due course the cause came on for trial before the justice, resulting in a finding for defendants, with special findings that the right of possession of the property was in the defendants at the commencement of the action and that the value of the same was $325.

Following the entry of judgment by the justice upon such findings, plaintiffs filed their affidavit for an appeal from the merits, and at the same time entered into a recognizance to defendants in the sum of $50, which bond was approved by the justice, and the appeal allowed to the Hannibal Court of Common Pleas.

At the conclusion of the trial of the case *de novo*, the court peremptorily directed the return of a verdict for plaintiffs based upon the

finding that defendants were in possession of the property at the institution of the action; that plaintiffs were entitled to the possession thereof; and that defendants had wrongfully detained the same from plaintiffs. Judgment was rendered accordingly, and defendants' appeal to this court has followed in the usual course.

When the case reached the court below upon plaintiffs' appeal from the judgment which had been rendered in defendants' favor in the justice's court, defendants filed a motion to dismiss the appeal upon the ground that plaintiffs had not complied with the requirements of Section 2341, Revised Statutes Missouri, 1929 (Mo. Stat. Ann., sec. 2341, p. 2444) with respect to the giving of the appeal bond. The motion to dismiss was overruled by the court, and the correctness of the ruling is challenged by defendants' first assignment of error.

Section 2341 provides that no appeal shall be allowed from a judgment rendered by a justice of the peace unless the appellant shall not only take his appeal within the time given by the statute, but shall also enter into a recognizance to the adverse party, conditioned as specified in the statute, and "in a sum sufficient to secure the payment of such judgment and the costs of appeals."

In the case at bar there is no question raised as to the form of the bond or the solvency of the surety, but instead the sole complaint is that the penalty of the bond, which was fixed at the sum of $50, was not sufficient to secure the payment of the judgment and the costs of the appeal. Incidentally, it will be recalled that in finding for defendants upon the issue of right to possession of the property, the justice had assessed the value of the same at $325, and the judgment rendered against plaintiffs and their surety had therefore been that they returned the property taken to defendants, or else pay defendants the sum of $325, the value assessed by the justice. In view of this situation, with the penalty of the bond fixed at a sum not only less than the value as assessed by the justice but also less than the value of $250 as alleged by plaintiffs in their statement, defendants insist that the bond was patently insufficient under Section 2341, and they argue that the court should consequently have sustained the motion to dismiss the appeal inasmuch as plaintiffs, following the filing of the motion, did not thereafter enter into a sufficient recognizance (as they might have done) before the motion to dismiss was determined.

We think that defendants were entitled to complain of the insufficiency of the bond, and that having done so, the court was in error in not sustaining their motion to dismiss the appeal.

We have already pointed out the requirement of Section 2341 regarding the character of recognizance that must be entered into by one who seeks to perfect an appeal from the judgment of a justice of the peace, and we may also add that the statute makes no exception to its application.

Though conceding the necessity of formally complying with Section 2341 with respect to the giving of the appeal bond provided for therein, it has at all times been plaintiffs' contention that the sufficiency of the bond they gave should be determined with regard for the character of the proceeding in which it was given, that is, in a replevin suit in which, if defendants had prevailed upon the trial anew, the judgment would have gone against plaintiffs and their surety on the replevin bond. This being true, they argue that in a replevin suit, where the appellant has given a replevin or redelivery bond as the case may be, the ordinary appeal bond ceases to serve its usual function as the security for the judgment which may be rendered, and save, perhaps, as to the costs of the appeal, becomes essential only because the statutes makes the giving of such form of bond a condition precedent to the right to have an appeal allowed.

All this might be well enough were it not for the fact that the Legislature has made no such exception in the case of appeals in replevin suits, but instead has expressly provided in Section 2341 that no appeal shall be allowed "in any case" unless the appellant shall enter into a recognizance to the adverse party "in a sum sufficient to secure the payment of such judgment and the costs of appeal." In other words, even though the case in which the appeal is taken may be a replevin suit in which the appellant has already given a good and sufficient replevin or redelivery bond, still when he appeals from the judgment of the justice he must give the appeal bond which the statute calls for, that is, a bond "in a sum sufficient to secure the payment of such judgment and the costs of appeal," and this regardless of the fact that his replevin or redelivery bond remains a fixed obligation in the case until its final termination.

While we have found no case directly decisive of the precise point now in issue, the tenor of all the decisions is to the effect, not only that the appellant in a replevin suit must give the usual and ordinary appeal bond as in other types of cases, but also that the extent of the obligation which he must assume is not at all modified, changed, or lessened by reason of the fact that he has already given a replevin or redelivery bond providing security to the adverse party, if he prevails, for the return or delivery of the property and for such damages and costs as he may be entitled to recover. To the contrary, the authorities hold that the appeal bond constitutes a cumulative security for the respondent or party in whose favor the judgment appealed from has gone, and that upon the taking of the appeal, the respondent thereafter has two securities instead of one, since the giving of the appeal bond does not in anywise serve to discharge or release the surety upon the replevin or redelivery bond. [Brabon v. Pierce, 34 Mich. 38; Wheeler & Wilson Mfg. Co. v. Johns, 37 Fla. 262, 20 So. 236; Mishler v. Edmundson, 92 Ore. 347, 180 Pac. 934; Swasey v. Adair, 88 Cal. 203, 26 Pac. 83; Swartz v. English, 4 Kan.

App. 509, 44 Pac. 1004; Willems v. Moore, 19 Ohio App. 26; Campbell v. Lane, 2 Neb. 63, 95 N. W. 1043.]

In this case plaintiffs sought by their appeal to have the judgment of the justice vacated and the case sent up to the court below for trial anew and the entry of an independent and original judgment. There was only one way by which this could be accomplished, and that was by filing the statutory affidavit for appeal and by giving the statutory appeal bond. If the question of the sufficiency of the bond had involved a matter concerning which the court might have exercised a judicial discretion, we would be without authority to interfere with its ruling except upon the showing of an abuse of its discretion. But here there is no matter of discretion to be considered. No one contends that the appeal bond as given was "in a sum sufficient to secure the payment of such judgment and the costs of appeal", but instead the point is that the bond was at most required to secure nothing but the costs. In answer to this it is sufficient to say that such contention is contrary to the unqualified language of the statute, which neither this court nor the court below has the right to disregard.

There is a suggestion in plaintiffs' brief that the court's ruling on the motion to dismiss has not been properly preserved for our consideration. Plaintiffs, in compliance with Rule 33 of this court, did file written objections to the sufficiency of the abstract as prepared and filed by defendants, but not with specific reference to the point of which they now complain. Their motion to dismiss the appeal to this court because of the alleged insufficiency of the abstract has already been overruled, and not having made timely and proper objection to the manner in which the point now in issue was brought up to us, they may not at this late stage of the case claim the benefit of a technicality in order to defeat a consideration of the point on its merits. [Gnekow v. Metropolitan Life Ins. Co. (Mo. App.), 108 S. W. (2d) 621.]

It follows for reasons stated that the judgment of the Hannibal Court of Common Pleas should be reversed and the cause remanded with directions that an order be entered dismissing plaintiffs' appeal from the judgment of the justice. The Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the Hannibal Court of Common Pleas is, accordingly, reversed and the cause remanded in accordance with the recommendations of the Commissioner. *Hostetter, P. J.,* and *Becker* and *McCullen, JJ.,* concur.

### ON MOTION FOR REHEARING.

BENNICK, C.—A motion for rehearing has been filed by plaintiffs (respondents) in which, along with other matters, they question the propriety of our directing the lower court to dismiss their ap-

peal from the judgment of the justice without first affording them a reasonable opportunity, after our mandate goes down, to file a bond in a sum sufficient to secure the payment of the judgment and the costs of the appeal to the lower court.

We are not to be understood as having held that the lower court did not derive and acquire jurisdiction over the appeal, even though the purported statutory bond which plaintiffs had entered into before the justice was insufficient for the reasons stated in our principal opinion. It is true that in strictness the justice should not have allowed the appeal until a sufficient bond had been filed, but when he did allow it, and his return was filed in the lower court, that court became "possessed of the cause", and acquired initial jurisdiction for the purpose of the trial anew without regard to any error, defect, or other imperfection in the proceedings had before the justice. [Sec. 2352, R. S. Mo. 1929 (Mo. Stat. Ann., sec. 2352, p. 2453); Biederman Furniture Co. v. Isbell (Mo. App.), 102 S. W. (2d) 746; New England Nat. Bank v. Corbin (Mo. App.), 239 S. W. 591; G. S. Limes & Son v. Wright (Mo. App.), 208 S. W. 281; Standard Historical Soc. v. Gillespie (Mo. App.), 111 S. W. (2d) 954.]

But though the lower court did acquire jurisdiction of the case upon the return of the justice being filed with it, that did not mean that the right was foreclosed to defendants in the lower court to raise the point of the insufficiency of the bond. To the contrary, they were entitled to move (as they did) for the dismissal of the appeal upon the ground that the bond as given was insufficient, whereupon plaintiffs had two courses open to them—either to stand upon the bond they had already given, or else, before the motion to dismiss was determined, enter into such recognizance as they ought to have entered into before the allowance of the appeal, in which latter event their appeal could not have been dismissd regardless of the insufficiency of the original bond. [Sec. 2353, R. S. Mo. 1929 (Mo. Stat. Ann., sec. 2353, p. 2455); New England Nat. Bank v. Corbin, *supra*; Biederman Furniture Co. v. Isbell, *supra*.]

Plaintiffs chose the first of such alternatives, and in so doing took the chance of having the bond declared insufficient upon a subsequent review of the court's ruling, which was in nowise conclusive upon the question of the sufficiency of the bond.

But counsel suggests that defendants should be held to have waived the point by appearing to the merits of the case after their motion to dismiss the appeal had been overruled. While there are certain cases which do so hold, apparently upon the theory that the question is one of jurisdiction of the parties, we think that the tenor of the better reasoned cases is all to the contrary. Actually the question raised by the appellee's motion to dismiss for want of a recognizance, or because the recognizance given is defective or insufficient, is not one of whether the circuit court has jurisdiction either of the

subject matter or of the parties, but instead is one of whether it has the right to exercise the jurisdiction which it acquired upon the return of the justice being filed with it. [Donohue v. Southwestern Surety Ins. Co., 281 Mo. 267, 219 S. W. 930; Bader v. Jones, 119 Mo. App. 685, 691, 96 S. W. 305.] While the appellee may indeed waive such point by proceeding to trial on the merits without having first moved to dismiss the appeal, yet if he does file his motion to dismiss, he does all that Section 2353 requires of him, and if the court improperly denies his motion, the error is subject to be reviewed and corrected on appeal. [Bader v. Jones, *supra*; New England Nat. Bank v. Corbin, *supra*; Welsh v. Hannibal & St. J. R. Co., 55 Mo. App. 599; G. S. Limes & Son v. Wright, *supra*.]

As to the point that plaintiffs should in any event be afforded a reasonable opportunity to correct the insufficiency of their bond before the order is entered dismissing their appeal, the obvious answer is that they had such an opportunity after the motion to dismiss was filed, but elected not to avail themselves of it. Defendants have rights under Section 2353 which are no less to be observed than are the rights of plaintiffs, and now that the motion to dismiss has been determined, it is too late for plaintiffs to enter into such a recognizance as they ought to have entered into before the allowance of the appeal by the justice.

It follows that respondents' motion for a rehearing should be overruled, and the Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. Respondents' motion for a rehearing is, accordingly, overruled. *Hostetter, P. J.,* and *Becker* and *McCullen, JJ.,* concur.